IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE M. HILL, JOSEPH M.
HILL, SR., and SANDRA F. HILL,

       Plaintiffs,

                          CIVIL ACTION NO.

v.                      1:11-cv-799-JEC

FORD MOTOR COMPANY,

       Defendant.

## ORDER & OPINION

This case is before the Court on defendant's Motion to Clarify Plaintiffs' Claims [41]; plaintiffs' Request for Oral Argument on Defendant's Motion to Clarify Plaintiffs' Claims and Plaintiffs Opposition to Same [44]; and defendant's Motion for Leave to Submit Supplemental Authority in Support of Their Motion to Clarify [56]. The Court has reviewed the record and the arguments of the parties and, for the reasons that follow, concludes that defendants' Motion to Clarify Plaintiffs' Claims [41] should be **GRANTED**; plaintiffs' Request for Oral Argument [44] is **DENIED**; and defendant's Motion for Leave to Supplement [56] is **GRANTED.**

## BACKGROUND

### I.   ORIGINAL COMPLAINT FILED IN THIS COURT

Plaintiffs filed their action in this Court on March 14, 2011. (Compl. [1] at 1.)  In their Complaint ("original complaint") [1], plaintiffs alleged that in March of 2009, their 1998 Ford Expedition, which was parked in plaintiff Stephanie Hill's garage and not turned on, erupted into flames that burned and destroyed both the vehicle and plaintiff's home.  (*Id.* at ¶¶ 1-2, 19.)  Her parents, plaintiffs Joseph and Sandra Hill, lived nearby and ran to Stephanie's home when they realized there was a fire.  (*Id.* at ¶¶ 19-21.)  Besides the property loss to Stephanie's home and vehicle, she and Joseph Hill suffered "health problems" (*id.* at ¶ 4), physical injuries, and "severe emotional injuries" as a result of their exposure to "toxic fumes and smoke."  (*Id.* at ¶¶ 4-5.)  Plaintiffs allege that defects in the switch mechanism of the vehicle caused this spontaneous combustion.  (Compl. [1] at ¶¶ 6-7.)

Plaintiffs contended that defendant Ford Motor Company is liable for their damages and they asserted the following causes of action: (1) strict products liability based on defendant's failure to warn (*id.* at ¶¶ 52-71); (2) strict products liability based on the existence of a design defect (*id.* at ¶¶ 72-83); (3) negligence (*id.* at ¶¶ 84-92); (4) negligent infliction of emotional distress ("negligent infliction") (*id.* at ¶¶ 93-103); (5) intentional

2

infliction of emotional distress ("intentional infliction") (Compl. [1] at ¶¶ 104-09); (6) a violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 (*id.* at ¶¶ 110-22); (7) loss of consortium by plaintiff Sandra Hill (*id.* at ¶¶ 123-24); and (8) a request for punitive damages (*id.* at ¶¶ 125-42).

## II.   <u>TRANSFER OF THIS CASE AS PART OF A CONSOLIDATED MULTIDISTRICT LITIGATION ("MDL") PROCEEDING</u>

Shortly after this case was filed, it was transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Michigan for consolidated proceedings to be presided over by Judge Bernard A. Friedman, MDL 1718.  Prior to the transfer of plaintiffs' case to the MDL, Judge Friedman had entered an Order adopting a master complaint to be used by all the transferred cases before him (and all cases subsequently transferred into MDL 1718), both while the cases proceeded before Judge Friedman and when those cases might later be remanded to their respective transferor districts for trial. (MDL Dkt., Case Mgmt. Order No. 1 [18] at 8-9.)  This master complaint was designated "Plaintiffs' Fourth Amended Master Complaint ("Master Complaint").  (MDL Dkt., Fourth Am. Master Compl. [269-2].) This Master Complaint provided for two causes of action available to each "incident-plaintiff" who, like the Hills, experienced a fire and are suing for the resulting damages under strict liability (*id.* at ¶¶ 103-18) and negligence theories (*id.* at ¶¶ 119-22).

3

The Master Complaint stated that "incident-plaintiffs" suffered damages including, but not limited to: (1) damage or destruction of their Ford Vehicle and the resulting loss of use of it (*id.* at 15); (2) damage or destruction to other property because of the vehicle fire (*id.*); inconvenience and disruption of life resulting from the fire (MDL Dkt., Fourth Am. Master Compl. [269-2] at 15); and, in some cases, psychological or physical injuries resulting from the fire. (*Id.*)

In their prayer for relief, incident-plaintiffs sought monetary damages for: (1) the damage to or destruction of their Ford Vehicles and other property because of the fire; any personal injury and/or mental anguish resulting from the fire; the inconvenience and disruption of work resulting from the fire; and punitive damages. (*Id.* at 35.)

The MDL Panel transferred the present case from this Court to MDL 1718 in April 2011, after Judge Friedman had earlier issued the Master Complaint. ([15].) There was a procedure, however, for a plaintiff whose case was added later to the MDL to seek an amendment of that Master Complaint. Specifically, counsel for plaintiffs could petition the MDL court for leave to amend the Master Complaint, within twenty-one days of transfer or consolidation (whichever occurred first), if the Master Complaint did not adequately include the proposed claims. (MDL Dkt., Case Mgmt. Order No. 1 [18] at 9.)

4

As the Master Complaint did not include claims for negligent or intentional infliction of emotional distress, both of which claims had been included in the Hill plaintiffs' original complaint before this Court, the Hill plaintiffs filed a motion[1] before Judge Friedman to amend the MDL Master Complaint to include these two additional claims. (MDL Dkt., Mot. for Leave to File Amendment to MDL Master Compl. [600] at 2.)

Plaintiffs' proposed amended complaint incorporated all the paragraphs in the Master Complaint and added complaints for negligent infliction and intentional infliction of emotional distress.[2] (*Id.* at Ex. A.) Their negligent infliction claim alleged that plaintiffs Stephanie and Joseph Hill "inhaled toxic fumes and smoke, experienced dangerous levels of heat in [their] immediate proximity, and [were] exposed to toxic environmental conditions, all of which caused physical and severe emotional injuries." (*Id.* at ¶¶ 7-8.) The plaintiffs further alleged that they suffered "humiliation, mental anguish, and emotional distress" as a proximate and direct result of the defendant's negligence and therefore were entitled to damages.

---

[1] The motion was untimely, as the plaintiffs did not file it until October 2011, long after the 21-day deadline imposed by Judge Friedman in Case Management Order No. 1. (MDL Dkt., Mot. for Leave to File Amendment to MDL Master Compl. [600] at 9.)

[2] The plaintiffs took the language of their proposed claims verbatim from their original complaint.

5

(*Id.* at ¶¶ 10.)   In their intentional infliction claim, plaintiffs alleged that defendant's conduct in designing the truck and their failure to warn led to severe emotional distress.  (*Id.* at ¶¶ 14-15.)

Defendant objected to this amendment, arguing that the proposed claims were futile because they would not survive a motion to dismiss.  (MDL Dkt., Def.'s Resp. to Pls.' Mot. for Leave to File Amendment to MDL Master Compl. [604] at 2.)  Defendant argued that Georgia law allowed a recovery for negligent infliction only where there is some impact on the plaintiff, and the impact required by Georgia law must lead to physical injury.  (*Id.* at 6.)   Relying on Georgia caselaw, defendant argued that even where there was some physical injury, such as inhalation of smoke, that injury must cause the emotional distress.  Defendant noted that plaintiffs' proposed amended complaint contained no allegations suggesting a causal link. (*Id.* at 7-8.)

Defendant acknowledged an exception to these requirements where the defendant's conduct was "malicious, willful, or wanton and [was] directed against the plaintiff."  (*Id.* at 8.)   While defendant conceded that plaintiff did plead such conduct in their proposed amendment, defendant argued that plaintiff had also made allegations that this conduct was directed to the public at large, not specifically at the plaintiff.  (*Id.*)   Defendant cited Georgia caselaw that held that willful and wanton behavior that threatens the

public in general does not meet the exception to the impact rule being sought by the plaintiff. (MDL Dkt., Def.'s Resp. to Pls.' Mot. for Leave to File Amendment to MDL Master Compl. [604] at 9.)

As to plaintiff's proposed intentional infliction claim, defendant noted that Georgia law requires extreme and outrageous conduct as a predicate to such a claim. Defendant argued that the conduct alleged by plaintiff could not, as a matter of law, meet this high standard. Further, defendant repeated its argument that any misconduct by defendant had not been directed at plaintiff, but at the public at large. (*Id.* at 11.)

In reply, plaintiffs provided no contrary Georgia law to rebut defendant's contentions, but essentially argued that, notwithstanding that law, plaintiffs' claims should not be dismissed. (Pls.' Reply Br. to Def.'s Resp. Br. to Pls.' Mot. for Leave to File Amendment to MDL Master Compl. [606] at 2.) Plaintiffs emphasized that defendant was improperly attempting to turn their Motion for Leave to Amend into a dispositive motion that would prematurely eliminate the claims on their merits.[3] (*Id.* at 5, 8.) Instead, plaintiffs argued that their complaint made a prima facie showing required for both

---

[3] Judge Friedman's description of the amendment procedure for the Master Complaint does not contain any language that precludes defendant from objecting to an amendment or attempting to dismiss one, and hence the Court finds that this argument is without merit. (MDL Dkt., Case Mgmt. Order No. 1 [18] at 9.)

7

negligent and intentional infliction claims and, because factual questions remained, they should be allowed to go forward with these claims. (*Id.*)

Judge Friedman issued an Order denying the Hill plaintiffs' motion to amend to add these two claims to the Master Complaint. (MDL Dkt., Order Denying Mot. for Leave to File Amendment to MDL Master Compl. [614].) As to these claims, he found persuasive defendant's argument that plaintiff had failed to plead facts suggesting a causal connection linking the physical impact and physical injuries to the emotional distress, as required by Georgia law. (*Id.* at 3.) He further agreed with defendant that the exception to the required causal connection requires willful or wanton conduct directed specifically against the plaintiffs, whereas here any misconduct by defendant was directed only at the general public. (*Id.* at 3-4.) Thus, the plaintiffs had failed to make the necessary allegations to state a claim. (*Id.* at 4.)

Plaintiffs filed no motion for reconsideration, made no effort to replead their complaint, nor otherwise objected to Judge Friedman's ruling.

III. **REMAND TO THIS COURT**

A few months after Judge Friedman's Order denying the Hill plaintiffs' Motion to Amend the Master Complaint, the MDL Panel remanded the cases still pending before Judge Friedman back to their

8

respective district courts for further proceedings. ([18].) The Hill plaintiffs' action was then reopened in this Court in July 2012 [20] and a scheduling order [21] was issued.

Prior to the deadline for the conclusion of discovery and the filing of dispositive motions, defendant filed the present motion asking the Court to clarify what plaintiffs' claims are in this case. ([41].) As defendant believes it knows what those claims should be, the motion is, in effect, an effort to have the Court communicate this information to the plaintiff. Defendant contends that this is necessary because correspondence from the plaintiff indicates that plaintiffs insist they are entitled to pursue the emotional distress claims included in their original complaint, but disallowed by Judge Friedman, on the ground that plaintiffs failed to state a claim under these causes of action. (Pls.' Resp. to Def.'s Mot. to Clarify Pls.' Claims [41-3] at Ex. C.)

## DISCUSSION

### I.   ODD PROCEDURAL POSTURE OF CASE

This case is obviously in an odd posture, procedurally. Plaintiffs act as if they are operating under a different complaint than the one authorized by Judge Friedman on remand, but they have never sought to amend that master complaint in this Court. Their position, essentially, is that the MDL rulings have no impact on these proceedings and that the case should be litigated as if the MDL

9

never happened.   Whether or not this argument has any merit, it is
one that plaintiffs should have made directly and a long time ago.
Instead, their presumptuousness in simply ignoring the pretrial
proceedings in this case prior to its transfer back to this Court has
cost the Court and parties a great deal of time and unnecessary work.
At any rate, in his suggestion of remand, Judge Friedman did enter a
Final Pretrial Order for those cases remanded back to their
transferor courts.   (MDL Dkt., Suggestion of Remand and Final MDL
Pretrial Order for Remanded Cases [618].)   Specifically, the Final
MDL Pretrial Order For Remanded Cases provides:

> [T]he Court issues the following Order, which applies to
> each remanded case pursuant to the Court's Suggestion of
> Remand.
>
> 1.   Claims and Damages
>
> The only claims to be tried in each transferor court
> are (1) negligence; (2) strict products liability; and (3)
> in actions subject to Louisiana law, claims under the
> Louisiana Products Liability Act, D.E. 91, 269-328, 370,
> 516 and 589.

(*Id.* at 3-4.)

That language could not have been clearer.   Thus, at the time of
remand, an order issued by the judge then presiding over the case
ruled that incident-plaintiffs would only be able to try negligence
and strict products liability claims.   (*Id.*)   Lest there is any doubt
about whether plaintiffs were on notice that they could not pursue
emotional distress claims, Judge Friedman's prior denial of their

10

motion to amend the MDL Master Complaint made clear that he had considered their arguments and determined that plaintiffs had failed to state a claim under those theories.

Accordingly, given the above orders by Judge Friedman, plaintiffs obviously should have filed either a motion to amend complaint or something that alerted the undersigned that they wished to undo Judge Friedman's ruling.  As they did not do this--but instead were content to send emails and correspondence to opposing counsel announcing that they intended to ignore Judge Friedman's ruling--the Court will construe their response to defendant's Motion to Clarify as a constructive motion in this Court to amend the Master Complaint.  Yet, as the plaintiffs have already filed one motion to amend before Judge Friedman, and lost that motion, this "motion to amend" here is really a motion to reconsider Judge Friedman's ruling on plaintiffs' prior motion to amend.  That being so, the Court must review plaintiff's litigation on this issue before Judge Friedman in determining whether a motion to reconsider would be meritorious.

## II.  <u>STANDARD OF REVIEW</u>

Plaintiffs' position essentially being that Judge Friedman's ruling should be reconsidered, one's first observation is that plaintiffs are greatly out of time in seeking that relief.  That is, plaintiffs never filed a motion to reconsider before Judge Friedman, even though his order denying amendment preceded his suggestion of

11

remand by two months.[4]  More significantly, once the case was remanded and reopened in this district, over fourteen months ago, plaintiffs never filed a motion to reconsider before this Court.[5]  Instead, they were content to litigate for almost a year in a parallel universe with the defendant, with defendant understandably assuming that the emotional distress claims were not a part of the case, given the ruling of a federal judge to that effect, while plaintiffs pretended that this was not so.

Thus, a motion to reconsider now by the plaintiffs, had they gone to the trouble of actually filing one, could be properly denied as being untimely.  Nevertheless, the Court will not rule against the plaintiffs on timeliness grounds, at least as to this narrow issue, as it is important that the matter be decided correctly on the merits.  As to the merits of a motion to reconsider, Local Rule 7.2(E) authorizes a motion for reconsideration when "absolutely necessary."  LR 7.2(E), NDGa.  A motion for reconsideration is appropriate when there is: (1) an intervening change in the controlling law, (2) newly-discovered evidence, or (3) a need to

---

[4]  Under the Local Rules for the Eastern District of Michigan, a motion for reconsideration must be filed within 14 days of issuance of the order to be reconsidered.  LR 7.1(h)(1), E.D. Mich.

[5]  In this Court, a motion to reconsider must be filed within twenty-eight days of issuance of the order in question.  LR 7.2(E), NDGa.

correct clear error or prevent manifest injustice.  *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d 1374, 1383 (Fed. Cir. 2010).

Plaintiffs have not pointed out a change in the intervening law or any newly-discovered evidence, so plaintiffs' only potential route to relief under the standards provided for a motion to reconsider is persuading this Court that Judge Friedman clearly erred.  If he did, the undersigned will assume that his exclusion of plaintiffs' two requested claims would create a manifest injustice.

Alternatively, the Court could approach Judge Friedman's ruling as being the "law of the case," which means that this Court would be required to abide by that earlier ruling unless plaintiff demonstrated that an exception to this principle applies.  This is the approach urged by defendant.  The Fifth Circuit, among other courts, has held that when a ruling by an MDL transferee judge is challenged after remand in the transferor district in which the case was filed, that ruling constitutes the law of the case that should be followed, absent the existence of an exception to application of the law of the case doctrine.  *In re Ford Motor Co.,* 591 F.3d 406, 411 (5th Cir. 2009).

In *In re Ford Motor Co.,* the Fifth Circuit was called on to examine the refusal of a transferor district court to review the decision of the transferee MDL judge on the question of an available

13

forum.  This transferor judge believed that the pretrial rulings of an MDL judge should not be reconsidered, absent "extraordinary circumstances," otherwise the entire purpose of the MDL process would be defeated.  *Id.* at 410.  The Fifth Circuit disagreed and rejected this approach, which some courts have adopted and which holds that a transferor court can never overrule a transferee court's rulings.

The Fifth Circuit concluded that, while deference should be given to the rulings of the MDL judge, these rulings were not sacrosanct.  *Id.* at 410-11.  Rather, the circuit court held, a transferor court should use the law of the case doctrine in deciding whether to revisit a transferee court's decision.  After all, it noted, a district court can correct its own error, so there is no reason that it should not be able to correct the error of a judge to whom the case had been assigned prior to being reassigned or transferred to the second judge.  *Id.* at 411.  Applying that doctrine when a party challenges an MDL judge's ruling on remand, a transferor court "should rarely reverse, because any widespread overturning of transferee court decisions would frustrate the principle aims of the MDL process and lessen the system's effectiveness."  *Id.*  Yet, use of the law of the case doctrine permits the transferor court to correct "serious errors."  *In re Ford*, 591 F.3d at 411.

As described by the Fifth Circuit, the law of the case doctrine requires that a court not revisit the determination of an earlier

14

equivalent court unless: (1) the evidence at a subsequent trial is substantially different; (2) controlling authority has changed; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Id.* at 411-12. The Eleventh Circuit applies the same test. *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984).

Noteworthy, though, at least to the undersigned, is the fact that use of the law of the case doctrine will almost always be inapt when examining whether one district court judge assigned to a case can undo the ruling of a predecessor judge who presided over the case. As the *Williams* court noted, in almost every case invoking it, the law of the case doctrine refers solely to the applicability of an earlier appellate decision in the case to a subsequent district court proceeding thereafter. *Id.* at 1406. This is so because in the typical case at the trial court level, it would be silly to say that a district judge could not reverse a prior ruling that she had made in the same case if she later decided she had been wrong. A litigant would never succeed on appeal by arguing that even though the district judge's final ruling was correct, she should be reversed because she failed to stick with a first impression that was not clearly erroneous. On appeal, the appellate court is only going to care whether the ultimate ruling was right, not whether the judge's first call on the issue was arguably meritorious.

For this reason, *Williams* noted that "[a]t the trial court level, the doctrine of the law of the case has been described as 'little more than a management practice to permit logical progression toward judgment." *Id.* at 1406 (citation omitted). In the case before it, the jury had hung in the first case involving the criminal defendant. *Id.* at 1404. On retrial before a different judge, the latter refused to give an instruction favorable to the defendant that the first judge had given. *Id.* On appeal, the now-convicted defendant argued that the first judge's decision regarding the instruction constituted the law of the case and that the second judge should not have deviated from it. *Williams*, 728 F.2d at 1405.

The Eleventh Circuit acknowledged that when a case is transferred from one judge to another on the same court, the transfer should not be treated as an opportunity to re-litigate all the questions decided by the first judge. *Id.* at 1406. Nevertheless, it questioned whether the law of the case doctrine was apt in the case before it or in cases generally that involve only changed rulings at the district court level. *Id.* Even if one could wedge the doctrine into a scenario not involving an intervening appellate court ruling, the court noted that the law of the case doctrine "is flexible, and a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court." *Id.*

The Eleventh Circuit ultimately found no fault with the second

16

judge's decision and affirmed.  *Id.*  In doing so, it did not examine either the first or second judge's decision under a clearly erroneous standard, but simply inquired whether the second judge's decision was correct, under established standards for evaluating a judge's refusal to give a requested instruction.  *Williams*, 728 F.2d at 1406.

Nevertheless, whether one describes the current endeavor by plaintiffs as a motion to reconsider Judge Friedman's decision concerning the viability of the emotional distress claims or as a motion to amend the Master MDL Complaint, which effort might be subject to a "law of the case" analysis, the standard is going to be the same.  Under either test, plaintiffs will be required to demonstrate clear error in Judge Friedman's decision.

III. **MERITS OF JUDGE FRIEDMAN'S RULING ON PLAINTIFFS' MOTION TO INCLUDE THE EMOTIONAL DISTRESS CLAIMS IN THEIR LITIGATION**

As noted, Judge Friedman determined that plaintiffs' proposed claims for negligent and intentional infliction of emotional distress would be futile.  (MDL Dkt., Order Denying Mot. for Leave to File Amendment to MDL Master Compl. [618] at 5.)  In other words, he effectively ruled that such claims were subject to dismissal under FED. R. CIV. P. 12(b)(6).  The question here is whether he clearly erred.

17

**A.   <u>Negligent Infliction of Emotional Distress Claim</u>**

1.   <u>The Impact Rule</u>

Under Georgia's "impact rule," a plaintiff must prove three elements for a negligent infliction claim: (1) a physical impact on the plaintiff, (2) that the impact causes physical injury to the plaintiff, and (3) that the physical injury to the plaintiff causes his or her emotional distress. *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 586 (2000). Judge Friedman considered plaintiffs' Complaint in light of Georgia's three-pronged rule and found the third element lacking because plaintiffs had failed to allege a causal link between their injuries and emotional distress. (MDL Dkt., Order Denying Mot. for Leave to File Amendment to MDL Master Compl. [614] at 3.)

As defendants essentially concede, and as Judge Friedman determined, the undersigned also concludes that plaintiffs' allegations satisfy the first two prongs of the test requiring an impact and a physical injury. That is, Stephanie and Joseph Hill inhaled smoke, experienced high levels of heat, and were exposed to toxic conditions as a result of the fire.[6] Similarly, in *Canberg v. City of Toccoa*, 255 Ga. App. 890 (2002), as the owners watched their home burn down, the smoke and heat from the fire caused their eyes to burn and water and almost caused them to choke. The Georgia Court of

---

[6]   (*See generally* Compl. [1] at ¶¶ 7-8; Def.'s Resp. to Pls.' Mot. for Leave to File Amendment to MDL Master Compl. [604] at 7-8.)

18

Appeals held that the above facts satisfied the requirement of an impact and a physical injury. *Id.* at 891. Yet, the Georgia appellate court also concluded that the plaintiffs foundered on the third prong of the test, as they had failed to show that their physical injuries (burning and watery eyes) caused their subsequent mental suffering and emotional distress. *Id.*

In other words, while most people would suffer emotional distress from watching their home burn down and then being without a place to live, emotional distress from the temporary condition of watery, burning eyes cannot typically be inferred. And to be actionable, the emotional distress has to be caused by the alleged physical injury. *See, e.g., Wardlaw v. Ivey*, 297 Ga. App. 240, 243-44 (2009)(where a tree feel on plaintiff's truck as he was driving by, resulting in the destruction of the truck and minor injuries to the plaintiff, plaintiff had not shown that his resulting emotional distress emanated from those minor injuries; instead, his distress was caused by his difficulty replacing his truck, and the business problems and stress that ensued); *Wilson v. Allen*, 272 Ga. App. 172, 173 (2005)(emotional distress following an automobile accident that resulted in a bruise and broken fingernail was not caused by the latter minor injuries and, therefore, a negligent infliction claim was not viable).

Now it is true that the above-cited cases were decided at the

19

summary judgment stage.  Plaintiffs here argue that, at the dismissal stage, the complaint merely has to say that there was a causal relationship between their injuries and their subsequent distress, which plaintiffs did.   In this characterization, plaintiffs understate federal pleading standards.  A review of their allegation reveals that plaintiffs made a bare-boned conclusory statement that inhalation of smoke and fumes caused them emotional distress.[7]  It is not as if plaintiffs hadn't been told that this conclusory assertion could be problematic, as defendant pointed out this deficiency in its response to plaintiff's motion before the MDL court to amend the Master Complaint to add a negligent  and intentional infliction claim.  Specifically, defendant noted that plaintiffs failed the *Twombly/Iqbal* test, as their assertion constituted little more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007).  (MDL Dkt., Def.'s Resp. Br. to Pls.' Mot. for Leave to File Amendment to

---

[7]  The plaintiffs asserted that:

> As a result of the fire, [plaintiffs] incurred property loss and inhaled toxic fumes and smoke, experienced dangerous levels of heat in [their] immediate proximity, and [were] exposed to toxic environmental conditions, all of which caused physical injuries and severe emotional injuries.

(Compl. [1] at 23, ¶¶ 99-100.)

MDL Master Compl. [604] at 5-6.)

Yet, plaintiffs made no attempt to amend their complaint to add more specificity to the allegation.   Indeed, their reply brief suggests that they were unable to amend because the evidence actually showed that their emotional distress did <u>not</u> emanate from the physical injuries they suffered while watching their car and home burn.   Specifically, in this Reply, plaintiffs quoted from a note from their therapist, who made it clear that the plaintiffs' distress was caused by memories of a "traumatic event" (their house fire). There is no mention of any emotional distress being caused by the plaintiffs having had their eyes burn and water on the night of the fire.[8]

---

[8]   The excerpt of the note quoted by plaintiffs in their Reply submitted to Judge Friedman stated:

> This letter is to inform you that Stephanie M. Hill attended individual counseling sessions from August 2010 until November 2010. Throughout these sessions, we focused on the identification and treatment of symptoms of trauma caused by a house fire that occurred in March 2009.   These symptoms include intrusive, distressing thoughts that recall the traumatic event, intense distress when exposed to reminders of the traumatic events, physiological reactivity, such as increase in heart rate and shallow breathing when exposed to internal or external cues that symbolize the traumatic event, avoidance of thoughts, feelings, or conversations about the traumatic event, a pessimistic attitude regarding the future...sleep disturbance, and exaggerated startle response.

(MDL Dkt., Pls.' Reply Br. to Def.'s Resp. Br. to Pls.' Mot. for Leave to File Amendment to MDL Master Compl. [606] at 6.)

Typically, this Court permits a plaintiff an opportunity to amend her complaint where there is pleading flaw, as set out in *Twombly/Iqbal*. Here, though, plaintiffs had an opportunity already to amend before Judge Friedman. They have never asked the Court to allow them to amend their complaint here to remedy this alleged flaw. Indeed, as noted *supra*, they have proceeded in this litigation as if they could ignore entirely the MDL proceeding and the flaws in their claims on which Judge Friedman had ruled. Finally, it appears that no amendment could correct this problem.[9] Accordingly, as did Judge Friedman, this Court concludes that plaintiffs have failed to comply with the impact rule, which dooms their negligent infliction complaint, absent a showing of an exception to that rule.

2.    Exception to the Impact Rule

Georgia law does provide an exception to the impact rule for negligent infliction claims.[10] If a defendant's conduct is malicious, wilful, or wanton, *and is directed toward the plaintiff*, the plaintiff can recover for emotional distress without meeting the

---

[9]    Even if one could characterize plaintiffs' causation allegation as a factual, not a legal, allegation, and thereby conclude that plaintiffs did not run afoul of *Twombly/Iqbal*, the note from the therapist makes clear that the evidence that plaintiffs would use to support this claim would not comply with the third prong.

[10]    A narrow exception for a parent who witnesses a child's death also exists, *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 588 (2000), but that exception is obviously not relevant here.

AO 72A
(Rev.8/82)

requirements of the impact rule. *Ryckeley v. Callaway*, 261 Ga. 828, 829 (1992). Judge Friedman correctly noted that plaintiffs had only alleged that defendant's allegedly malicious behavior had been directed at the public at large, not at plaintiff, specifically. Accordingly, the plaintiffs could not utilize the exception to the impact rule and Judge Friedman's ruling on that point appears to be correct to the undersigned. But, as set out *supra* at Section C, that may not be the only basis upon which plaintiffs can recover damages based on defendant's negligence.

**B.   <u>Intentional Infliction of Emotional Distress Claim</u>**

An intentional infliction claim under Georgia law requires the satisfaction of four elements: (1) the conduct must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the conduct and the emotional distress, and (4) the emotional distress must be severe. *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (2001).

In ruling that any amendment by plaintiffs to allege an intentional infliction would be futile, Judge Friedman held that even if plaintiffs could meet the above four requirements, plaintiffs would still have to show that defendants' conduct had been directed toward them, as opposed to the general public. In so ruling, he cited to *Hall v. Carney*, 236 Ga. App. 172, 174 (1999), which the citation notes had quoted *Ryckeley v. Callaway,* 261 Ga. 828, 829

23

(1992). Judge Friedman therefore denied plaintiffs' motion to amend as to this claim.

In briefing this issue, defendant had mentioned the above argument in a two-sentence argument. Defendant's primary argument, however, had been that plaintiffs' allegations did not properly allege that defendants' conduct had been sufficiently extreme or outrageous. Judge Friedman did not mention this as a ground for dismissal, however.

Although aware that Georgia Court of Appeals decisions have several times cited *Ryckeley* for the proposition that an intentional infliction claim requires the conduct to be directed at the individual plaintiff, not the public at large, the Court has read *Ryckeley* and is not persuaded by that characterization. The reason: *Ryckeley* analyzes the issue as if the underlying claim was one for negligent infliction of emotional distress, not an intentional infliction claim (albeit the latter had been the type of claim that was before the Court).[11]

Nevertheless, in various factual scenarios, the Georgia Court of Appeals has cited *Ryckeley* for the proposition that an intentional infliction claim requires that the conduct be directed at the

---

[11] *See Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 821 (2008)(plaintiff could not use *Ryckeley* in support of his negligent infliction claim, because *Ryckeley* involved an intentional infliction claim).

plaintiff, not the public at large. *See*, *e.g.*, *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616-17 (2001)(where plaintiffs alleged an intentional infliction claim based on the wrongful disinterment and reburial of their mother, they had to show that defendant's conduct was outrageous; yet, even though they had not done so, they could still prevail if the conduct was "malicious, wilful or wanton" <u>and</u> the conduct was directed toward the plaintiffs, which they also failed to do); *Wolff v. Middlebrooks,* 256 Ga. App. 268, 270 (2002)(where an on-air disk jockey effectively accused the married plaintiff of admitting to a gay love affair with another man, an intentional infliction claim could not stand because, even though malicious, the remarks were not direct toward the plaintiff, but toward the radio public at large). *See also Wellborn v. Dekalb Cnty. Sch. Dist.*, 227 Ga. App. 377 (1997), where the court indicated that *Ryckeley* stood for the proposition that a negligent infliction claim is allowed only where there is some physical injury to the claimant and an intentional infliction claim is allowed only when an intentional act was directed toward the plaintiff; *Hall v. Carney*, 236 Ga. App. 172, 174 (1999)(the same).

Perhaps, the most succinct statement of the elements of an intentional infliction claim can be found in *Jones v. Fayette Family Dental Care, Inc*. 312 Ga. App. 230 (2011), where the court stated that to state an intentional infliction claim, a plaintiff must show

25

intentional or reckless conduct that was extreme and outrageous and that caused severe emotional distress.   Beyond that, if there has been no physical impact to the person of the plaintiff, she must also show that the conduct was directed toward her. *Id.* at 231-32.

In the present case, there was a physical impact on the plaintiffs--the smoke and fumes got in their eyes--but they cannot satisfy the physical impact rule because they have not shown that the physical injury caused their emotional distress.   Whether that means that the plaintiffs here can or cannot state an intentional infliction claim, the Court is not sure.   As the Georgia appellate court was probably using the phrase, "physical impact," synonymously with the term, "impact rule," the plaintiffs probably cannot state a claim.

In short, as to an intentional infliction claim, the Court is not altogether clear what the trigger is to require a showing that the conduct was directed at the plaintiff.   Accordingly, for this reason, as well as the brevity of Judge Friedman's discussion and the fact that the basis for his holding was not the primary basis advanced by defendant in its opposition to an intentional infliction claim, the Court will require further briefing by the parties as to whether Judge Friedman's ruling as to this claim was erroneous.

As discovery has been concluded, this briefing should be more fact-specific than the earlier briefing at the motion to dismiss

26

stage.   The docket indicates that defendant has recently filed a motion for summary judgment in this case.   From a quick review of that motion, the Court saw no discussion of plaintiffs' purported emotional distress claims.   If defendant wishes to renew its motion for summary judgment as to the intentional infliction claim or any emotional distress claim, it should file a motion for summary judgment on those issues.

### C.   Plaintiffs' Newly-Advanced Pecuniary Loss Theory of Recovery

In their briefing before this Court, plaintiffs have argued that even if they cannot recover for emotional distress based on a negligent infliction claim, there is an alternative theory of recovery allowing them to recover for their emotional distress, and that this theory is consistent with the claims permitted by Judge Friedman.   Specifically, plaintiffs note that Georgia law recognizes a "pecuniary loss rule" that permits recovery for emotional distress. That rule allows for recovery where there is "an injury to property that results in pecuniary loss if injury to the person is also present, even if that injury is not physical." *Nationwide Mut. Fire Ins. Co. v. Lam*, 248 Ga. App. 134, 136-38 (2001).

Plaintiffs have seemingly alleged sufficient facts to satisfy this rule.   They suffered a pecuniary loss (the destruction of their car and home) and a physical injury (burning eyes irritated by smoke

27

fumes).   (Compl. [1] at ¶¶ 1, 4-5.)  Caselaw indicates that this rule does not give rise to an independent emotional distress claim. Instead, the rule allows a plaintiff to "tack on" emotional distress damages to an underlying tort.  *See, e.g. Nationwide Mut. Fire Ins. Co.*, 248 Ga. App. at 138 (allowing plaintiff to recover for emotional damages after a trespass resulted in a pecuniary loss and a personal injury); *OB-GYN Assocs. of Albany v. Littleton*, 259 Ga. 663, 667 (1989)("[F]or a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person."); *Barrow v. Ga. Lightweight Aggregate Co.*, 103 Ga. App. 704, 709 (1961)(allowing recovery for mental injuries due to trespass on real property); *Kuhr Bros., Inc. v. Spahos*, 89 Ga. App. 885, 890 (1954)("In cases where mere negligence is relied on, before damages for mental pain and suffering are allowable, there must also be . . . a pecuniary loss resulting from an injury to the person."), *rev'd on other grounds*, *Whiten v. Orr Const., Co.*, 190 Ga. App. 267 (1964).

Albeit defendant has not briefed this issue, it appears that, if there is an underlying tort and the plaintiff can satisfy the elements of the pecuniary loss rule, then the plaintiff can recover for emotional injuries based on that tort.  Now it is true that plaintiffs never raised this argument before Judge Friedman, as they should have done.  It is also true, however, that defendant has not

28

disputed the potential merit of such a theory of recovery, other than to offer a conclusory assertion that the plaintiff did not properly plead this theory. (*See* Def.'s Reply [47] at 7-8.) The Court is not sure that this so, however, as the plaintiffs pled negligence, damage to property, and emotional distress. Absent some persuasive argument by the defendant to the contrary, the Court will assume that this is enough under Georgia law to trigger the pecuniary loss rule. At any rate, defendant will be free, in its second motion for summary judgment, to raise any arguments it wishes contesting the viability of any claims by plaintiffs for emotional or psychological damages.[12]

IV.   **CONCLUSION**

The Court **GRANTS** defendant's Motion to Clarify Plaintiffs' Claims [41], as set out above. To the extent that defendant seeks to have the Court preclude plaintiffs from recovering damages for emotional or mental distress, the Court **DENIES** the motion, without prejudice. The Court **DENIES as moot** plaintiffs' motion for oral argument [44]. The Court **GRANTS** defendant's Motion for Leave to

---

[12]   While the Court has expressed its agreement with defendant that plaintiffs have not satisfied the impact rule, any briefing by either party should fully explain the law on negligent infliction claims, whether there is a pecuniary loss or not. In other words, the Court does not want to have to go it alone in interpreting Georgia law in the next round of briefing. Further, any new briefing should not refer to arguments made in a previous brief. All of the parties arguments should be made in this new briefing.

Supplement [56].

If the defendant wishes to file a motion for summary judgment on any of these matters, whether it be a negligent or intentional infliction of emotional distress claim or a claim for such damages under the pecuniary loss rule, defendant may do so.  Any such motion should be filed by **November 1, 2013**.  Plaintiffs may file a timely response, to which defendant may filed a timely reply.


SO ORDERED, this <u>24th</u> day of September, 2013.



<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

30