IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE M. HILL, JOSEPH M.
HILL, SR., and SANDRA F. HILL,

      Plaintiffs,

                         CIVIL ACTION NO.

v.                        1:11-cv-799-JEC

FORD MOTOR COMPANY,

      Defendant.

## ORDER AND OPINION

This case is before the Court on defendant Ford Motor Company's Motion for Summary Judgment [59] and Motion to Strike Plaintiffs's Surreply to Defendant Ford Motor Company's Motion for Summary Judgment [70] ("Motion to Strike"). The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Strike [70] should be **DENIED** and defendant's Motion for Summary Judgment [59] should be **DENIED**.

## BACKGROUND

This is a product liability suit against defendant for an allegedly defective speed control deactivation switch ("switch" or "deactivation switch"). In the early morning hours on March 24, 2009, plaintiff Stephanie M. Hill awoke to the shrill blasts of her

smoke detector.  (Compl. [1] at ¶¶ 1, 19.)  Hill's garage was ablaze and the flames and smoke were beginning to engulf her home.  (*Id.* at ¶¶ 1-2, 19-20.)  The fire awoke Hill's parents, Joseph M. and Sandra F. Hill, who lived near Hill in Stockbridge, Georgia and who rushed to their daughter's house.  (*Id.* at ¶¶ 1, 21.)  With her father's assistance, Hill escaped her burning residence.  (*Id.* at ¶¶ 1-5; Resp. [65] at 3.)  While Hill and her father survived, both allegedly suffered severe physical and emotional injuries as a result of their exposure to heat, smoke, and toxic fumes.  (Compl. [1] at ¶¶ 4-5, 22-23.)  Their property was not so lucky.  The fire destroyed Hill's house and possessions, as well as Joseph's 1998 Ford Expedition (the "Expedition"), which Hill was using at the time and which had been parked and turned off in her garage on the night of the fire.  (*Id.* at ¶¶ 25, 68.)

The exact cause of the fire at Hill's residence is at issue in plaintiffs' suit.  Plaintiffs allege that a defective deactivation switch in the Expedition ignited the blaze.  (Compl. [1] at ¶¶ 6, 33-51.)  A deactivation switch is a hydraulic switch that deactivates a vehicle's cruise control when the brakes are applied.  (Br. in Support of Mot. for Summ. J. [59] at 2.)  It sits on the vehicle's master brake cylinder and receives hydraulic pressure from brake fluid on one side and power from the battery on the other.  (*Id.*)  When a vehicle's brakes are applied, the brake fluid exerts pressure

on a switch converter to actuate a snap disc that breaks the cruise control circuit. (*Id.*) While a diaphragm and gasket separate and seal a deactivation switch's hydraulic and electrical sides, on some vehicles, the brake fluid has leaked, as a result of a defective seal, and has corroded switch contacts, thereby shorting the circuit and causing overheating, smoke, and fires. (*Id.*; Resp. [65] at Ex. I; Compl. [1] at ¶¶ 33-51.) The engine does not have to be running, nor does the cruise control need to be activated, for this fault to occur. (Resp. [65] at Ex. I.) Plaintiffs claim that the Expedition suffered from this flaw and that this is what caused the fire at Hill's home. (Compl. [1] at ¶¶ 6, 33-51.)

The Court will not belabor the tangled procedural history of this case, which is described in more detail in the Court's Order granting defendant's Motion to Clarify Plaintiffs' Claims [73], but some recitation is necessary to understand the motions at issue. Plaintiffs filed their original Complaint [1] against Ford in this Court on March 14, 2011, alleging: (1) strict products liability, (2) design defect, (3) negligence, (4) negligent infliction of emotional distress, (5) intentional infliction of emotional distress, (6) violation of the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, and (7) loss of consortium. They also requested punitive damages.

Because of its similarity to other cases filed against Ford

3

across the nation by plaintiffs who had suffered fires that they alleged to have resulted from a failed deactivation switch, the Judicial Panel on Multidistrict Litigation ("MDL") transferred plaintiffs' action to the Eastern District of Michigan. (Conditional Transfer Order [17].)  There, Judge Friedman issued a Fourth Amended Master Complaint ("Master Complaint") limiting the claims that could be pursued by these plaintiffs to: (1) strict liability for unreasonably dangerous vehicles and (2) negligence.[1] (Resp. [43] at Ex. B, ¶¶ 103-122.)  Plaintiffs moved to amend the Master Complaint to include their Georgia state law claims of negligent infliction of emotional distress and intentional infliction of emotional distress. Judge Friedman, however, denied this motion on the ground that these claims were frivolous.  (Resp. [43] at 5-6.)

Following conclusion of the MDL proceeding, this Court reopened plaintiffs' action.  (Conditional Remand [18]; Mot. to Reopen Case [19] at Case Mgmt. Order No. 1, §§ VIII, XII, Order [20].)  Both the defendant and this Court reasonably assumed that the Master Complaint was the operative complaint under which the case would be litigated. Yet, defendants received correspondence from plaintiffs' counsel indicating their intent to ignore Judge Friedman's ruling and to pursue claims for negligent and intentional infliction of emotional

---

[1]  The Master Complaint also allows these plaintiffs to recover punitive damages.  (Resp. [43] at Ex. B, ¶ 35.)

4

distress.    Accordingly,  defendant  filed  a  motion  to  clarify
plaintiffs' claims, which this Court granted.  (Mot. to Clarify [41];
Order [73].)

In that Order, the Court assumed that plaintiffs' actions were
an effort to unilaterally undo Judge Friedman's ruling striking their
infliction of emotional distress claims, albeit the plaintiffs never
filed  a  motion  to  do  so.    In  their  briefing  in  response  to
defendant's  motion  for  clarification,  plaintiffs  advanced  a  new
"pecuniary  loss"  theory  that  would  allow  them  to  claim  emotional
distress  under  the  facts  of  this  case.    Albeit  plaintiffs  did  not
make this argument before Judge Friedman and their current argument
was  more  than  a  little  late--a  phenomenon  that  has  become
characteristic  for  plaintiffs'  counsel--the  Court  permitted  this
claim  to  go  forward,  as  it  is  derivative  of  the  negligence  claim
properly before the Court.[2]  (Order [73] at 27-30.)

---

[2]  As to the negligent  and  intentional  infliction  of  emotional
distress claims that were ruled out by Judge Friedman, the Court
indicated its doubt that such claims could proceed under the facts of
this case, but noted that further briefing would be necessary before
a  firm  conclusion  could  be  reached.    It  invited  the  defendant  to
renew its motion on this ground, but defendant failed to do so by the
designated deadline.  (Order [73] at 17-27,29-30.)  At any rate, as
the plaintiffs will be able to proceed on its emotional distress
claim based on a pecuniary loss theory, there should be no need for
them to try to pursue the highly-doubtful infliction of emotional
distress claims.  This must be sorted out, however, prior to the next
round of summary judgment motions.

Accordingly, as set out in the above Order, the claims now present in this case are:  (1) strict products liability, (2) negligence, and (3) emotional distress, as allowed by a pecuniary loss theory and derivative of the first two claims.  Prior to issuance of the Court's Order clarifying the claims in the case, defendant had filed its Motion for Summary Judgment [59].  Plaintiffs responded and supported their opposition to summary judgment with reports from previously undisclosed experts/witnesses.  In response to plaintiff's response, defendant filed a reply that, among other things, objected to consideration of these new reports.  Plaintiffs filed a surreply in which they offered a fuller "report" from their original expert: a report that had not been earlier disclosed. Defendants have moved to strike this surreply and the newer and more complete report by the first expert, now provided by plaintiffs.

Presently pending are defendant's Motion for Summary Judgment [59] and defendant's Motion to Strike [70].

**I.    MOTION TO STRIKE**

    **A.    Briefing That Preceded, And Prompted, Defendant's Motion To Strike**

        1.    Defendant's Motion for Summary Judgment

Because the motion to strike can best be understood by examining the basis of defendant's motion for summary judgment, the Court begins with a discussion of the latter and tracks the evolution of

AO 72A
(Rev.8/82)

the parties' arguments through their briefing of that motion. In its motion for summary judgment, filed prior to the Court's Order clarifying the claims in the case, defendant indicated that the statute of repose barred all of plaintiff's claims except for the following: (1) a negligent failure to warn claim and (2) a claim for negligence arising out of conduct manifesting a willful, reckless, or wanton disregard for life or property. (Br. in Support of Mot. for Summ. J. [59] at 5-6.)[3] As to these remaining claims, defendant argued that plaintiffs could not prove liability because, based on the undisputed evidence, plaintiffs could not show that the deactivation switch on their Ford Expedition caused the fire that led to their property damages and subsequent emotional distress.

Specifically, defendant noted that to prove their case, plaintiffs must show that the deactivation switch had a defect and that this malfunction led to the fire of the Expedition, which, in turn, led to the fire that engulfed the plaintiffs' home. As no one actually witnessed the switch ignite and trigger a fire, defendant noted that evidence of causation, as well as a defect, had to be supported by expert testimony. (*Id.* at 15-17.) Yet, defendant advised, plaintiffs had submitted only a paltry one-page report from

---

[3] Plaintiffs do not disagree with defendant's argument that the statute of repose bars the described claims. (*See* Resp. [65] at 9-11.)

AO 72A
(Rev.8/82)

their expert, Jeffery Morrill, in which the latter noted that his task was to determine both whether "the [deactivation switch] had failed and if the failure precipitated the fire." (*Id.* at 6-7.) Yet, as defendant noted, the expert only offered a conclusion that the deactivation switch had "internally failed." He offered no opinion about whether, or how, the switch's failure had caused the fire. (*Id.* at 8, 12-13.) Without some evidence that the switch's failure caused the fire, plaintiffs had failed to prove a crucial element of their claims.[4]

    2.  Plaintiff's Response

    In their response [65], plaintiffs contended that they could produce evidence from which one could infer that the deactivation switch had a defect. Specifically, they noted that in 1999, Ford had initiated a recall of vehicles containing this type of switch--which was the second largest recall in Ford history--because of their discovery that some of the deactivation switches could develop a short that could result in a fire under the hood, and that this fire could arise even if the vehicle was turned off. Indeed, Ford had sent out not only a recall to its affected customers, but also a document explaining the process that could lead to the switch's

_____

    [4]  Defendant also argued that the expert's opinion that the switch had failed was not sufficient to withstand summary judgment, as a plaintiff is required to provide evidence of a defect in the product.

8

failure and, as a result, to a fire under the hood.  In addition the National Highway Traffic Safety Administration had, itself, issued a report outlining in detail the potential problems with the deactivation switch.  Indeed, plaintiffs note, their Ford Expedition was one of the vehicles identified for a recall by Ford.  (Resp. [65] at 2, 4-6.)

As to plaintiffs' purported absence of evidence that the defective switch caused their fire, they concede that their expert, Jeffery Morrill, expressed no opinion on causation.  (*Id*. at 11.)  To correct this deficiency, they attached a report and an affidavit from fire inspectors who had investigated their fire.  Specifically, A. W. Durham, of Durham Fire Investigations, who had inspected the burned-out wreckage of plaintiffs' home and vehicle, issued a report indicating his conclusion that the fire originated at the 1998 Ford Expedition and was caused by a failure of the deactivation switch.  Kevin Cunningham, a certified investigator of fires, submitted an affidavit in which he noted that he had inspected the scene of plaintiffs' fire at the behest of Progressive Fire Insurance Company, which presumably was plaintiffs' insurer.  Cunningham noted his conclusion that the burn patterns on the structure placed the origin of the fire at the left driver's side of the vehicle.  He further stated that he had retrieved the remains of the deactivation switch and sent it to Morrill to test; the latter reported that the switch

9

had, in fact, failed.  From this and his own observations, Cunningham concluded that the fire at Stephanie Hill's home had been caused by the failure of the deactivation switch.  (*Id.* at 11, Ex. B; and Ex. C.)

In short, plaintiffs contended that defendant's motion for summary judgment should be denied because plaintiffs had produced evidence from which a reasonable fact-finder could infer both a defect and causation.

### 3.   Defendant's Reply to Plaintiffs' Response

Defendant filed a Reply [66] to plaintiffs' response, and in that Reply it vigorously objected to plaintiffs' effort, after the close of discovery, to inject new opinions by expert witnesses that were not disclosed to the defendant during the discovery period. Defendant noted that, through this non-disclosure, plaintiffs had violated FED. R. CIV. P. 26, as well as this Court's comparable local rule and the Court's Scheduling Order.  Indeed, as defendant correctly observed, albeit plaintiffs seemingly acknowledged that Durham and Cunningham's "reports" were those of expert witnesses, plaintiffs offered no explanation why they had waited until six months after the deadline for expert disclosures and one month after the close of discovery to provide these opinions.

Given plaintiffs' non-compliance with FED. R. CIV. P. 26 and the Court's own Scheduling Order, defendant argued that FED. R. CIV. P. 37

calls for exclusion of these two witnesses and their testimony. Defendant further argued that, without the testimony of these two expert witnesses and with only the report of Morrill, who offered no opinion as to causation, plaintiffs could not prove the latter element of their case and summary judgment must be granted.

4.   <u>Plaintiffs' Surreply</u>

In response to defendant's Reply, plaintiffs filed a surreply [69] and contemporaneously supplemented Jeffery Morrill's expert disclosures.   Plaintiffs argued that they were not late in their disclosures, as their deadline was not until 90 days before the trial date, and no trial date had yet been set.   Second, they contended that their omission of this fuller expert disclosure by Morrill caused the defendant no prejudice, as Morrill's opinions duplicated those of the fire investigators, Durham and Cunningham, and as the defendant was well aware of those investigators' reports, given that defendant's own expert had referred to them in his expert disclosure. With this supplemented disclosure, as well as the earlier "reports" of the investigators, plaintiffs argued that they had provided evidence both of causation and a defect, and that summary judgment should be denied.

5.   <u>Defendant's Motion to Strike Surreply</u>

Plaintiffs' surreply prompted the defendant to then file the motion now before this Court: a motion to strike the surreply [70].

11

Defendant argues that the surreply should be struck because plaintiffs did not first obtain the permission of the Court, as is required. Second, defendant argues that a surreply is appropriate only if the reply to which it is responding introduced new arguments or issues. Defendant contends that its reply brief did not do so.

B.   <u>Whether Plaintiffs' New Disclosures Should Be Disregarded</u>

Although the present motion to strike is formally directed at plaintiffs' last pleading--the surreply--it is actually a motion to strike plaintiffs' tardy disclosure of a supplemental expert report by Morrill. And while, in its reply to plaintiffs' response to the summary judgment motion, defendant never filed a motion to strike the reports of fire inspectors Cunningham and Durham attached to that response, defendants likewise argued in that pleading that this Court should disallow those reports, as being untimely. Finally, in its motion to strike the surreply, defendant essentially seeks to have this Court disallow the more complete expert report of Morrill attached to the plaintiffs' surreply. Of course, were the Court to disallow plaintiffs' reliance on these various reports and strike any testimony beyond that offered by Morrill in his very abbreviated, original one-page report that was disclosed during the discovery period, then plaintiffs would have no evidence to support the causation element of their case, and the Court would then be required to grant summary judgment to defendant.

Disposing quickly of defendant's technical objections to the surreply, it is true that plaintiffs did not request permission to file the surreply, as they should have done.[5] For sure, plaintiffs' counsel seem to be quite stymied by basic procedural rules applicable in federal civil litigation.   As a practical matter, though, the Court would not have considered a motion to file a surreply without first seeing the surreply, itself.   Thus, plaintiffs' omission of a formal "cover letter" motion for permission, while perhaps discourteous, was of little effect.

As to defendant's second technical objection:  that a surreply was improper, as defendant's reply did not introduce any new issues. To the contrary, in its reply, defendant argued that this Court should not consider the affidavit and report of two fire investigators on which plaintiffs based their opposition to the motion for summary judgment.   Certainly, it was understandable that

---

[5]   While neither the Federal Rules of Civil Procedure nor the Local Rules of the Northern District of Georgia authorize the filing of surreplies, a court may permit them at its discretion. *Fedrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005) (Duffey, J.); *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1568 (11th Cir. 1987).   A court should exercise its discretion to permit the filing of a surreply only when new issues are raised in a reply brief, there are new developments in the law, or a party shows excusable neglect.   *Garrison v. N.E. Ga. Med. Ctr., Inc.*, 66 F.Supp.2d 1336, 1340 (N.D. Ga. 1999) (O'Kelley, J.).   While parties typically must obtain permission from the Court before filing surreplies, the Court may excuse a party's failure to do so and consider the brief regardless. *See, e.g.*, *Brannen v. United States*, 2011 WL 8245026, *1 n.1 (N.D. Ga. Aug. 26, 2011) (Murphy, J.).

defendant would make this argument, but it was a "new" argument that called for a rebuttal by plaintiffs.   For all the above reasons, the Court will not strike the plaintiffs' surreply.

But the real question here is whether the Court should deem plaintiffs to be in violation of Rule 26's requirement for expert disclosures and, if so, whether the Court should accede to what is essentially a motion by defendant pursuant to Rule 37 to disallow any reliance by plaintiffs on the reports utilized in their response (Cunningham and Durham's report/affidavit) and in their surreply (Morrill's affidavit, constituting a supplement to original disclosure).   Again, should the Court do so, it would then be required to grant defendant's motion for summary judgment.

As to the question whether plaintiffs breached Rule 26 and its local rule counterpart, they clearly did.   A party seeking to present an expert witness in an action must make certain disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) and Local Rules 26.1 and 26.2.   FED. R. CIV. P. 26(a)(2)(2013); LR 26.1-.2, NDGa (2009). Specifically, the party must disclose the expert's identity and provide a written report of the expert's opinions, the bases, facts, and data he considered, his qualifications, the actions in which he has previously testified, and his compensation.   FED. R. CIV. P. (26)(a)(2)(B).

As to the deadline for making an expert disclosure, plaintiffs

argue that they were in compliance with Rule 26(a)(2)(D), which requires the party proffering the expert to make these disclosures "at least ninety days before the date set for trial or for the date the case is to be ready for trial." As a trial date had not yet been set, plaintiffs contend that they complied with Rule 26(a)(2)(D), which only requires disclosure 90 days before trial. Yet, plaintiffs concede that, by making their compliant expert disclosure of Morrill after discovery had ended,  they did not comply with the deadline specified in the Scheduling Order or by the deadline set out in the local rules.

As to plaintiffs' implicit argument that they only had to comply with the federal rule addressing the timeliness of expert disclosures, the Eleventh Circuit has rejected that argument, holding that where no trial date has been set--as was the situation here and is almost always going to be the situation when a case is only in its early discovery stage--Local Rule 26.2(C) controls and requires expert disclosures to be made "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert." Thus, the disclosure must be made, at the latest, before the close of the discovery period. *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361-62 (11th Cir. 2008), citing *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008). A party that fails to make these disclosures is not permitted to "use [the] information

15

or witness to supply evidence on a motion, at a hearing, or at a trial, <u>unless the failure was substantially justified or is harmless</u>." FED. R. CIV. P. 37(c)(emphasis added).

Here, upon remand from Judge Friedman, the Court issued a scheduling order that required plaintiffs to make their expert disclosures by October 1, 2012. (Order [21].) The Court amended this Order in response to the parties' request for additional time to "resolve the damage issues and discuss settlement", giving plaintiffs until January 2, 2013 to make their Rule 26 disclosures. (Consent Mot. for Scheduling Order [40]; Am. Scheduling Order [45].) While plaintiffs provided a one-page "disclosure" concerning Morrill within the time period, they did not provide the type of expert disclosure report required by Rule 26 until after discovery was concluded and the defendant had filed a summary judgment motion. This was too late to be deemed as being compliant with the Court's Scheduling Order or the applicable local rule.

Thus, plaintiff's tardiness was not "substantially justified." But, as the Eleventh Circuit noted in *OFS Fitel*, deciding that a particular instance of non-compliance is not justified is only half the inquiry. Once that decision is made, the Court must next determine whether the omission was harmless and thereafter determine the appropriate sanctions. *OFS Fitel, LLC*, 549 F.3d at 1363.

The Court has broad discretion to determine whether a party's

16

discovery violation is harmless.  *See Silverstein v. Procter & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312, 1320 (S.D. Ga. 2009)(Wood, J.).  Its decision is guided by five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (Hall, J.).  In balancing the above factors here, the Court concludes that plaintiffs' infraction did not create prejudice to the defendant sufficient to warrant exclusion of their retained expert.

First, defendant did not suffer significant surprise by plaintiffs' supplementation.  As noted, Morrill stated in his one-page report that his assignment was twofold: to "determine if the [deactivation switch] had failed and if the failure precipitated the fire."  (*See* Br. in Support of Mot. for Summ. J. [59] at 6-7, Ex. 4.) Of course, even though he was writing only a one-page report, Morrill then promptly forgot to add in a sentence about causation, instead including only his opinion that the deactivation switch had failed. But even with that omission, defendant could not have been in great suspense as to plaintiffs' position on causation, as defendant and its own expert were in possession of the reports of the two fire inspectors who had offered firm opinions about causation.  Indeed, it

17

appears that Morrill's opinion on causation is derived from the inspectors, so it will likely be their testimony on causation that will be necessary for plaintiffs to offer.  Whether or not defendant deposed the inspectors, the undersigned does not know.[6]

Admittedly, even though defendant was aware that plaintiffs' counsel had already demonstrated a casual approach to the niceties of federal litigation practice and that counsel's present transgression was likely based more on their lack of experience and understanding of their obligations under Rule 26, than on a carefully-crafted plan to ambush defendant, the latter was certainly not required to tutor plaintiffs' counsel on the rules that govern federal litigation. That said, defendant could have avoided any surprise it later claimed to have suffered by simply calling up plaintiffs' counsel and advising them of their non-compliant expert disclosure, rather than remaining mum and then, the day after discovery closed, filing a motion "seeking the harshest sanction available".  *Thornton v. United*

---

[6]  The Court is also uncertain whether it is defendant's position that a Rule 26 report was due for the fire inspectors.  At any rate, it would seem that, at this juncture, the defendant has adequate information concerning the opinion of the inspectors and can depose them when discovery is reopened.  In short, if defendant contends that plaintiffs have not complied with Rule 26 as to the inspectors or Morrill, defense counsel should not sit on their hands during the second discovery period, waiting until they file their motion for summary judgment to point out plaintiffs' missteps.  Instead, they will need to promptly request any supplementation of the expert disclosure report that they seek.

18

*States*, No. CV. 111-16 2013 WL 443666, *8 (S.D. Ga. Feb. 5, 2013)(Hall, J.).

Indeed, as to the fourth factor--the importance of the evidence--an exclusion of the proffered evidence concerning causation would be case-dispositive. Given that defendant had recalled thousands of vehicles precisely because the deactivation switch in those vehicles could do just what plaintiffs claim happened here-- spontaneously combust while the vehicle was parked--and that plaintiffs potentially have evidence that could create a jury question as to whether this is what happened with their vehicle, striking that evidence would constitute an excessively harsh sanction for plaintiffs' counsel's non-compliance with Rule 26.

In short, although plaintiffs' infractions were not so severe as to warrant exclusion of the evidence, which would result in a grant of the "harshest sanction available"--summary judgment for the defendant--plaintiffs' actions do call for an award of attorneys' fees to defendant. *See Thornton*, 2013 WL 44366, at *8. Accordingly, **by March 24, 2014**, defendant shall submit documentation to the Court and plaintiffs of the expenses it reasonably incurred in filing the Motion to Strike [70] and the Motion For Summary Judgement [59], and all related briefing. Should plaintiffs have a substantial basis to contest the reasonableness of these fees, they must file an objection

19

by **April 7, 2014.**[7]

Once the Court has issued an Order awarding these fee, plaintiffs' counsel will be directed to reimburse defendant for the fees and expenses awarded by the Court. Upon payment of these fees, the Court will order a reopened two-month period of discovery to allow full discovery on the question of causation and, if necessary, defect.

For all the above reasons, the Court **DENIES** defendant's Motion to Strike [70]. Because defendant coherently presented its arguments for exclusion of the Durham and Cunningham reports, exclusion of Morrill's supplementation, and the propriety of summary judgment if the Court considers those opinions, the Court also **DENIES** defendant's request for an opportunity to file a sur-surreply. (Mot. to Strike [70] at 5-6.)

**II.   MOTION FOR SUMMARY JUDGMENT**

As the Court has denied defendant's motion to strike, but is reopening discovery, it **DENIES WITHOUT PREJUDICE** defendant's motion for summary judgment [59].

**CONCLUSION**

For the above reasons, the Court **DENIES** defendant's Motion to

---

[7]   Plaintiffs should file an objection only if they can articulate substantial doubt as to the reasonableness of defendant's asserted fees and expenses.

20

Strike [70] and **DENIES without prejudice** defendant's Motion for Summary Judgment [59]. Consistent with the timeline set out above, *supra* at 19-20, defendant shall submit its bill for reasonable expenses and fees incurred to file defendant's motion to strike, motion for summary judgment, and all related briefing.

SO ORDERED, this <u>10th</u> day of <u>March</u>, 2014.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

21